## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHYLLIS GRAY, ERIKA BROWN, LISA SATCHEL, KENNETH BREWER, on behalf of themselves and all others similarly situated, | Case No. 2:20-cv-04415 (JMA) (SIL) |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| WALGREENS BOOTS ALLIANCE, INC., and LNK INTERNATIONAL, INC., | |
| Defendants. | |

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs Phyllis Gray, Erika Brown, Lisa Satchel, and Kenneth Brewer (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants Walgreens Boots Alliance, Inc. and LNK International, Inc. The following allegations are based upon personal knowledge as to Plaintiffs' own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

### INTRODUCTION

1.       Defendant LNK International, Inc. ("LNK") is one of the nation's largest manufacturers of solid and liquid dose over-the-counter pharmaceuticals.[1] LNK's operation includes providing, among other things, laboratory services, manufacturing services, packaging services, and marketing services[2] for store brands like Walgreens Boots Alliance, Inc.[3]

2.       Defendant Walgreens Boots Alliance, Inc. ("Walgreens") "is a global leader in retail and wholesale pharmacy, touching millions of lives every day through dispensing and distributing

---

[1] https://www.lnkintl.com/ (last accessed 10.26.2020).
[2] https://www.lnkintl.com/our-operation (last accessed 10.26.2020).
[3] https://www.lnkintl.com/about-lnk (last accessed 10.26.2020)

medicines, its convenient retail locations, digital platforms and health and beauty products."[4] Its "purpose is to help people across the world lead healthier and happier lives."[5]

3.     Walgreens' principal U.S. pharmacy retail brands are Walgreens and Duane Reade,[6] which together form "one of the largest drugstore chains in the U.S."[7]

4.     Walgreens sells a variety of health and wellness products, including over-the-counter-pharmaceuticals at its Walgreens stores.

5.     In addition to selling name brand over-the-counter drugs, Walgreens, in conjunction with LNK, produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under the Walgreens label "Well at Walgreens" to families, children, and other consumers, including analgesic or pain-relieving medicines using acetaminophen.

6.     In 2005, Johnson & Johnson Consumer Inc. introduced the name brand Tylenol® ("Tylenol") Extra Strength Rapid Release Gels to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[8] Three years later, Tylenol PM Rapid Release Gels were launched with the same promises.[9]

7.     Following Tylenol's rapid release launch, Defendants Walgreens and LNK (together, "Defendants") introduced a generic Walgreens version called Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™.



[10]

[4] http://www.walgreensbootsalliance.com/ (last accessed 9.2.2020).
[5] *Id.*
[6] *Id.*
[7] https://www.walgreensbootsalliance.com/our-business (last accessed 9.2.2020).
[8] https://www.tylenol.com/news/about-us (last accessed 9.2.2020) (emphasis added).
[9] *Id.*
[10] https://www.walgreens.com/store/c/walgreens-pain-reliever-quick-gels/ID=prod6153224-

8.     Defendants also introduced a generic version of the Tylenol Extra Strength PM Rapid Release Gels called Well at Walgreens Extra Strength Pain Reliever PM Fast-Release Quick Gels™.



9.     Since the release of the generic Well at Walgreens "fast-release" products, Defendants have misled and continue to mislead consumers about the nature, quality, and effectiveness of the so-called fast-release products through advertising and labeling.

10.    In particular, Defendants intentionally market and label the Walgreens brand acetaminophen Fast-Release Quick Gels™ (the "Class Fast-Release Quick Gels") as comparable to Tylenol Extra Strength Rapid Release Gels, and intentionally market and label the product with the distinguishing "fast release" characteristic.

11.    But despite what the labeling and advertising would have consumers believe, the term "fast-release" or "rapid release" do not actually mean that the drug works faster for consumers than non-fast or non-rapid release products. The same is true of the brand name Tylenol rapid release products.

12.    Defendants have long known or should have known that traditional, non-fast release acetaminophen products can be equally effective in the same, if not faster, time period than the fast-release products.

13.    In fact, a study demonstrates that the Class Fast-Release Quick Gels dissolve slower than the Walgreens brand non-fast release products.[12]

---

product (last accessed 11.15.2018).
[11] https://www.walgreens.com/store/c/walgreens-pain-reliever-pm-gelcaps/ID=prod6191253-product (last accessed 11.15.2018).
[12] Kucera, Jessop, Alvarez, Gortler, Light, Rapid and Fast-Release Acetaminophen Gelcaps

14. Yet, Walgreens charges a premium for the Class Fast-Release Quick Gels.

15. Defendants engage in the false, misleading, unfair, and deceptive "fast-release" labeling in order to dupe consumers into purchasing the gelcaps for prices that exceed their true value. Defendants have pursued and continue to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

16. Plaintiffs and Class Members are consumers who were misled or deceived by Defendants false, misleading, unfair, and deceiving representations and as a result purchased the Class Fast-Release Quick Gels.

17. Plaintiffs and Class Members would not have purchased the Class Fast-Release Quick Gels had Defendants disclosed accurate information about the products and not misled them into believing that the Class Fast-Release Quick Gels would provide faster relief than other, cheaper acetaminophen products, such as the traditional Walgreens acetaminophen tablets.

18. Plaintiffs, thus, bring this class action against Defendants on behalf of themselves and all others similarly situated who purchased the Class Fast-Release Quick Gels, seeking damages and appropriate equitable relief given that Defendants' conduct violated well-established consumer protection laws of Illinois, Missouri, New York, and the United States.

## **THE PARTIES**

19. Plaintiff Phyllis Gray is a citizen and resident of Staten Island, Richmond County, New York.

20. Plaintiff Erika Brown is a citizen and resident of Tinley Park, Cook County, Illinois.

21. Plaintiff Lisa Satchel is a citizen and resident of Streamwood, Cook County, Illinois.

22. Plaintiff Kenneth Brewer is a citizen and resident of St. Joseph, Buchanan County, Missouri.

---

Dissolve Slower Than Acetaminophen Tablets, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 9.2.2020).

23.     Defendant LNK is a New York for-profit corporation with a principal place of business and headquarters located in 22 Arkay Drive, Hauppauge, New York 11788.  Defendant LNK operates its business in New York, manufacturing , designing, labeling, marketing, and supplying the Class Fast-Release Quick Gels throughout the United States, including within the State of New York and within this District.

24.     Defendant Walgreens is a Delaware corporation that maintains its headquarters at 108 Wilmot Road, Deerfield, Illinois 60015. Defendant Walgreens owns and operates numerous drug stores throughout the United States, including hundreds of stores in the State of New York and within this District.

## JURISDICTION AND VENUE

25.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed class is a citizen of a state different from Defendants; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action.

26.     This Court can exercise supplemental jurisdiction over the Class' state law claims under 28 U.S.C. § 1367.

27.     This Court can exercise personal jurisdiction over Walgreens because Walgreens intentionally avails itself of the markets within New York through the operation of hundreds of Walgreens stores within the state as well as the promotion, sale, marketing, and distribution of its products. In addition, Walgreens, in conjunction with LNK, manufactures, labels, packages, and receives supplies of the Class Fast-Release Quick Gels from within the State of New York.

28.     This Court can exercise personal jurisdiction over LNK because LNK is a New York corporation with a principal place of business in New York State and it conducts its business operations within the State.

29.     Venue is proper in this District under 28 U.S.C. § 1391 because Walgreens and LNK conducts substantial business in this District, which form the basis for Plaintiffs' claims.

## **FACTUAL ALLEGATIONS**

### **ACETAMINOPHEN GENERALLY**

30.     Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[13]

31.     In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[14] chronic pain,[15] etc.

32.     Typically, it is the first treatment recommended for any mild to moderate pain.[16] Therefore, acetaminophen is one of the most commonly used drugs in the world when it comes to pain mitigation, representing an estimated global market value of over $350 million annually.[17] It is even included on the World Health Organization List of Essential Medicines.[18]

33.     Given the wide-spread use of acetaminophen, both the quality and value of acetaminophen products present important public health, consumer safety, and economic concerns.[19]

### **DEFENDANTS SEEK TO CAPITALIZE OFF OF JOHNSON & JOHNSON'S SUCCESS OF TYLENOL NAME BRAND ACETAMINOPHIN PRODUCTS BY CREATING GENERICS**

34.     Tylenol is the well-recognized brand name of acetaminophen[20] produced, manufactured, and distributed by Johnson & Johnson.

---

[13] Kucera, Jessop, Alvarez, Gortler, Light, *supra,* n.8.
[14] https://www.drugs.com/acetaminophen.html (last accessed 9.2.2020).
[15] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371  (last accessed 9.2.2020).
[16] *Id.*
[17] Kucera, Jessop, Alvarez, Gortler, Light, *supra,* n.8.
[18] WHO. World Health Organization Model List of  Essential Medicines. August 2017 ed. https://apps.who.int/iris/bitstream/handle/10665/273826/EML-20-eng.pdf?ua=1 (last accessed 9.2.2020); June 2019 ed. https://apps.who.int/iris/bitstream/handle/10665/325771/WHO-MVP-EMP-IAU-2019.06-eng.pdf?ua=1 (last accessed 9.2.2020).
[19] Kucera, Jessop, Alvarez, Gortler, Light, *supra,* n.8.
[20] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 9.2.2020).

35.     At or around the time of Plaintiffs' purchases, Johnson & Johnson listed 27 Tylenol products on its Tylenol website, including: 5 oral suspension products, 6 liquid products, 1 chewable product, 1 tablet product, 1 coated tablet product, 11 caplet products, and 2 gelcap products.[21] All but one of the 27 products contain acetaminophen.[22] Johnson & Johnson has profited and continues to profit greatly from this Tylenol product line.

36.     Generic brands, like Walgreens, thus work with pharmaceutical manufacturers, like LNK, to mimic the product offerings of Johnson & Johnson, selling the generic version of the Tylenol products for a price less than the name brand equivalent.

37.     Specifically, Walgreens and LNK have worked together to develop, design, label, and market a Walgreens generic of the Tylenol products, including Tylenol Extra Strength Rapid Release gels. The generic versions are profitable for Walgreens and LNK.

38.     But the profitability on the Class Fast-Release Quick Gels comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

### THE DECEPTIVE MARKETING OF RAPID RELEASE TYLENOL

39.     Johnson & Johnson introduced Tylenol Extra Strength Rapid Release Gels in 2005 claiming that these rapid release gelcaps are "specially designed…to allow the release of powerful medicine even faster than before."[23] In 2008, Tylenol PM Rapid Release Gels launched, utilizing the same "rapid release" technology and the same or similar advertising.[24]

40.     This claim – that rapid release gelcaps work even faster than before – became associated with the regular and PM versions of Tylenol Extra Strength Rapid Release Gels.

41.     In 2009, the rapid release gels were recalled and were not re-released until 2017.[25]

---

[21] https://www.tylenol.com/products (last accessed 11.15.2018).
[22] Id.
[23] https://www.tylenol.com/news/about-us (last accessed 9.2.2020).
[24] Id.
[25] https://shoppermarketingmag.com/headache-sufferers-directed-walgreens (last accessed 11.15.2018).

42.     The national return to the market of the rapid release gels represented Tylenol's "biggest product launch in years" and, thus, the marketing campaign "involved triple the investment" that Johnson & Johnson would normally spend, all to encourage consumers to find "fast working pain relief."[26]

43.     "In the first month, [the campaign] reached over 25 million shoppers on their mobile device across five key markets, resulting in both category and Tylenol share growth at Walgreens."[27] Consumers were inundated with the campaign messaging in stores and online.[28]

44.     With its marketing, product labeling, and affirmative representations, Johnson & Johnson sought and continues to seek to further the falsehood: that rapid release Tylenol actually provides faster relief than other cheaper acetaminophen products.

45.     It did this not only by explicitly making the claim, but also by using buzz words that emphasized the speed, fast-acting nature, and unique laser-drilled holes of the rapid release gelcaps.

46.     For example, Johnson & Johnson advertised the rapid release gelcaps claiming it:



[29]

47.     Other marketing statements include, but are not limited to, the following:

    a.      "Tylenol[] Rapid Release Gels start to dissolve in seconds and effectively relieve pain at rapid speed"[30]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 9.2.2020).
[30] https://www.youtube.com/watch?v=_bZcPNyYu1o (last accessed 9.2.2020).

    b.    "Rapid release. Rapid relief."[31]

    c.    "Only Tylenol[] Rapid Release Gels have laser drilled holes. They release medicine fast for fast pain relief. Fast enough to keep up with you, so you can keep up with life."[32]

    d.    "Fast Working Pain Relief"[33]

    e.    "New Tylenol[] Rapid Release Gels. Gelcaps with specially designed holes to release powerful medicine even faster than before."[34]

    f.    "When you have pain from a pounding headache and you need relief, trust Tylenol[] Rapid Release… Tylenol[] Rapid Release Gelcaps dissolve quickly and relieve your headache pain fast."[35]

48.    Johnson & Johnson's marketing campaign has been successful in getting the public to believe that the rapid release gelcaps are faster acting than other Tylenol products, when in fact they are slower.

49.    Consumer reviews and comments indicate that consumers have been deceived and confused by Johnson & Johnson's representations; and some even notice after purchase that Tylenol Rapid Release Gelcaps do not work faster than regular, non-rapid release, acetaminophen Tylenol products that are cheaper.[36]

50.    Despite the fact that the "rapid release" gels are not rapid release and do not work faster than other, traditional acetaminophen products, Johnson & Johnson sells its rapid release gelcap products at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

---

[31] *Id.*
[32] https://www.youtube.com/watch?v=DzczfGN0NB4 (last accessed 9.2.2020).
[33] https://www.effie.org/case_database/case/SME_2018_E-375-981 (last accessed 9.2.2020).
[34] https://www.youtube.com/watch?v=cKp4xPNTrPY (last accessed 9.2.2020).
[35] https://www.youtube.com/watch?v=LN0GeRuMouk (last accessed 9.2.2020).
[36] See e.g., https://www.tylenol.com/products/tylenol-rapid-release-gels#by-product-reviews (last accessed 9.2.2020); https://www.tylenol.com/products/tylenol-rapid-release-gels (last accessed 9.2.2020); https://answers.yahoo.com/question/index?qid=1006050815308&page=1 (last accessed 9.2.2020); https://answers.yahoo.com/question/index?qid=1006050815308&page=2 (last accessed 9.2.2020); https://www.reviewstream.com/reviews/?p=46385 (last accessed 9.2.2020).

### DEFENDANTS' FALSE, MISLEADING, UNFAIR AND DECEPTIVE MARKETING AND LABELING OF THE CLASS FAST-RELEASE QUICK GELS

51.     Other companies followed Johnson & Johnson's labeling, marketing, advertising, and pricing lead and now, in general, acetaminophen products labeled, advertised, or marketed as "rapid release" or "fast-release" are sold on average at a price 23% higher than those acetaminophen products not making these rapid or fast-release representations.[37]

52.     Walgreens and LNK are two of the companies that followed Johnson & Johnson's lead.

53.     Specifically, Walgreens and LNK, together, developed, designed, labeled, and marketed the Class Fast-Release Quick Gels to be "comparable" to the Tylenol Rapid Release Gelcaps, uniformly labeling the products with the distinct "fast-release" and "rapid-release" claims.

54.     LNK then manufactured the product and Walgreens, in turn, sold the Class Fast-Release Quick Gels at a higher price than other equally effective and equally fast-acting acetaminophen products that are not classified as "fast- release."

55.     At or around the time of Plaintiffs' purchases, Walgreens listed 15 Class Fast-Release Quick Gel products, and/or products subject to the 2018 study demonstrating they are actually slower than traditional, cheaper acetaminophen products, on its website, including: Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gel™ in quantities of 24, 50, 100, 150, 225, and 375 gelcaps[38]; Well at Walgreens Extra Strength Pain Reliever PM Fast-Release Quick Gel™ in a quantities of 20, 80, 125 and 375 gelcaps[39]; Well at Walgreens Daytime Non-Drowsy Sinus Congestion & Pain Acetaminophen Fast-Release Quick Gels™ in a quantity of 24 gelcaps[40]; Well at Walgreens Tension

---

[37] Kucera, Jessop, Alvarez, Gortler, Light, *supra,* n.8

[38] https://www.walgreens.com/search/results.jsp?Ntt=walgreens%20pain%20reliever (last accessed 11.15.18).

[39] *Id.*

[40] https://www.walgreens.com/store/c/walgreens-sinus-congestion-%26-pain-reliever-gelcaps/ID=prod5816034-product (last accessed 11.15.18).

Headache Relief Acetaminophen Quick Gels™ in a quantity of 80 gelcaps[41]; and, Well at Walgreens Extra Strength Headache Relief Acetaminophen Quick Gels™ in quantities of 20, 80, 120 gelcaps.[42]

56.     Not all caplets and tablets are offered in the same quantities as the Class Fast- Release Quick Gels. However, a comparison of the prices of the Class Fast-Release Quick Gels to the equivalent caplets and tablets in the same counts demonstrates that Walgreens does charge more for the Class Fast-Release Quick Gels than their equivalent non-fast-release acetaminophen products.

57.     At or around the time of Plaintiffs' purchases, a regularly priced 50 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $5.99,[43] while a regularly priced 50 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $4.29.[44] There is a $1.70 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

58.     At or around the time of Plaintiffs' purchases, a regularly priced 100 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $7.99,[45] while a regularly priced 100 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $6.99.[46] There is a $1 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

59.     At or around the time of Plaintiffs' purchases, a regularly priced 150 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels™ costs $10.99,[47] while a

---

[41] https://www.walgreens.com/store/c/walgreens-tension-headache-relief-gelcaps/ID=prod5464916-product (last accessed 11.15.19).

[42] https://www.walgreens.com/search/results.jsp?Ntt=walgreens%20extra%20strength%20headache%20relieve&fromBack=true (last accessed 11.15.19

[43] https://www.walgreens.com/store/c/walgreens-pain-reliever-gelcaps/ID=prod6153221-product (last accessed 11.15.2018).

[44] https://www.walgreens.com/store/c/walgreens-pain-reliever-caplets/ID=prod6153231-product (last accessed 11.15.2018).

[45] https://www.walgreens.com/store/c/walgreens-pain-reliever-gelcaps/ID=prod6153222-product (last accessed 11.15.18).

[46] https://www.walgreens.com/store/c/walgreens-pain-reliever-tablets/ID=prod6153228-product (last accessed 11.15.18).

[47] https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-quickgel/ID=prod6153223-product (last accessed 11.15.18).

regularly priced 150 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $9.49.[48] There is a $1.50 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

60.     At or around the time of Plaintiffs' purchases, a regularly priced 225 count bottle of Well at Walgreens Extra Strength Pain Reliever Fast Release Quick Gels™ costs $14.99,[49] while a regularly priced 225 count bottle of Well at Walgreens Extra Strength Pain Reliever caplets costs $12.99.[50] There is a $2 difference between the Class Fast-Release Quick Gels and the non-fast-release product in this count.

61.     Consumers have been willing to and continue to pay this premium because, as a result of false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Fast-Release Quick Gels work faster than other, cheaper acetaminophen products when in fact, they do not.

62.     As a generic brand, Walgreens prices are still lower than their Tylenol counterparts because Walgreens did not have the expense of researching, developing, marketing, and promoting the drugs when they were new.

63.     Instead, Walgreens and  LNK  develop counter parts to Tylenol products after the public is familiar with the Tylenol product.

64.     In the case of the Class Fast-Release Quick Gels, Walgreens and LNK relied on Johnson & Johnson's massive marketing campaign and the success of its rapid release products before entering the market.

65.     Then Walgreens and LNK produced the Class Fast-Release Quick Gels to look the same as or similar to the Tylenol rapid release products.

---

[48]https://www.walgreens.com/store/c/walgreens-pain-reliever-caplets/ID=prod6153233-product (last accessed 11.15.18)
[49]https://www.walgreens.com/store/c/walgreens-pain-reliever-quick-gels/ID=prod6153224-product (last accessed 11.15.2018).
[50] https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-caplets/ID=prod6247455-product (last accessed 11.15.2018).

66.     For the regular, non-PM, product, Walgreens gelcaps are approximately the same size and shape as the Tylenol product and they utilize the same distinct color pattern – red on one end, blue on the other end, and a bit of white in the middle.

    

51                                                52

67.     The same is true for the PM product, Walgreens gelcaps are approximately the same size and shape as the Tylenol product and they utilize the same distinct color pattern – darker blue on one end, a lighter blue on the other end, and a bit of white in the middle.



53



54

---

51 https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-gelcaps/ID=prod6153225-product (last accessed 11.15.18)
52 https://adexchanger.com/advertiser/tylenol-feeling-good-mobile-strategy/ (last accessed 11.15.2018).
53 https://www.walgreens.com/store/c/walgreens-pain-reliever-pm-gelcaps/ID=prod6191254-product (last accessed 11.15.18)
54 https://www.amazon.com/Tylenol-Reliever-Nighttime-Strength-80-count/dp/B000XYIJP6 (last accessed 11.15.2018)

68.     Consumers were already accustomed to the look of the Tylenol rapid release products and familiar with the claims that they were fast-acting.

69.     Defendants did nothing to correct the thinking that "fast-release" and "rapid release" gelcaps worked faster than other, cheaper acetaminophen products.

70.     Instead, Defendants capitalized on that thinking and sought to further consumer deceit with false, misleading, unfair, and deceptive labeling and marketing, which focused on the "fast-release" claim.

71.     For example, on the packaging for the Class Fast-Release Quick Gels, Defendants associate the products with the Tylenol products.[55]

72.     Consumers try the Class Fast-Release Quick Gels because they are labeled "fast-release," that is comparable to, but cheaper than, the Tylenol rapid release products.

## THE SCIENCE BEHIND RAPID RELEASE PRODUCTS DEMONSTRATES THE LABELING AND MARKETING OF THE CLASS FAST-RELEASE QUICK GELS ARE FALSE, MISLEADING, UNFAIR, AND/OR DECEPTIVE

73.     Despite what Defendants represent to the public about the Class Fast-Release Quick Gels, they do not work faster than other, cheaper Walgreens acetaminophen products.

74.     A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Walgreens Fast-Release Quick Gels, revealed that these products not only fail to work faster, they actually work slower than their traditional acetaminophen counterparts, such as tablets.[56]

75.     Thus, the science demonstrates that the "fast-release" and "rapid-release" representations and advertising are false, misleading, deceptive, and unfair on their face.

76.     The level of deception and unfairness is elevated given that Defendants have long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of acetaminophen products to the fast-release gelcap design.

---

[55] https://www.walgreens.com/store/c/walgreens-pain-reliever-extra-strength-gelcaps/ID=prod6153225-product (last accessed 11.15.18).
[56] Kucera, Jessop, Alvarez, Gortler, Light, *supra*, n.8

77. Defendants knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[57]

78. There is no proven significant efficacy difference between the Class Fast-Release Quick Gels and the non-fast-release products to warrant the "fast-release" representation.

79. Defendants knew or should have known that the representations about the Class Fast-Release Quick Gels were false, misleading, unfair, and deceptive. Even though Defendants capitalize and rely upon information put in the marketplace by Johnson & Johnson, they are still responsible for the representations pertaining to the Class Fast-Release Quick Gels and investigating the truth or falsity of the same before presenting it to the American public.

80. Defendants knew or should have known that the Class Fast-Release Quick Gels did not work faster than the non-fast release products, but nonetheless falsely marketed the Class Fast-Release Quick Gels as comparable to other rapid release or fast-release products, suggesting to consumers that the Class Fast-Release Quick Gels worked faster than Walgreens' other, cheaper, non-rapid release, non-fast-release, acetaminophen products.

81. Defendants' conduct induced and continues to induce unwitting consumers to buy the Class Fast-Release Quick Gels for a premium price – a price that exceeds the actual value of the product.

**PLAINTIFFS' EXPERIENCES**

**Plaintiff Phyllis Gray**

82. Plaintiff Phyllis Gray purchased Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels, 50 count in mid-2018 at a local Walgreens store in New York at a premium price over the brand's acetaminophen tablet products.

---

[57] *Id.*

83.     Pictures of Plaintiff Gray's Class Fast-Release Quick Gels purchase appears below:

 

84.     Plaintiff Gray sought an acetaminophen product to address her headaches, typically associated with her chemotherapy treatments.

85.     Initially, about a decade ago, she purchased Tylenol caplets. Later she began purchasing the coated Tylenol product.

86.     Plaintiff Gray then saw a commercial advertising Tylenol rapid release gels and, believing the product offered faster relief, she began purchasing the Tylenol rapid release gels.

87.     Given the cost of the brand name rapid release gels, Plaintiff Gray later switched to the Class Fast-Release Quick Gels, as they were cheaper and marketed as comparable to the Tylenol rapid release product.

88.     She purchased the Class Fast-Release Quick Gels consistently for years, buying varying bottle sizes and gel counts depending on what was available at the store once or twice a year. She estimates that she has spent at least $40 on the Class Fast-Release Quick Gels.

89.     She purchased the Class Fast-Release Quick Gels over other Walgreens brand and other acetaminophen products because they were advertised and labeled as "fast-release" and comparable to the Tylenol rapid release gelcaps, they were cheaper than the name brand product, and, because she believed, due to the labeling, that the gels worked faster than traditional acetaminophen products, such as the tablets. Ultimately, she was searching for the product that would relieve her headache symptoms as fast as possible.

90.     Defendants' marketing (labeling and advertising) misled Plaintiff Gray to believe that the Class Fast-Release Quick Gels she purchased would provide faster relief than other cheaper Walgreens acetaminophen products.

91.     Had Plaintiff Gray known that the Class Fast-Release Quick Gels did not act any faster than traditional, cheaper Walgreens products, she would not have been willing to pay the premium that she did for the Class Fast-Release Quick Gels. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

92.     The cost of the Class Fast-Release Quick Gels exceeded the value of the product and Plaintiff Gray did not receive the benefit of the bargain.

**Plaintiff Erika Brown**

93.     Plaintiff Erika Brown purchased Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels, 375 count on or about July 1, 2018 at Walgreens in Tinley Park, Cook County, Illinois at a premium price over the brand's acetaminophen tablet products.

94.     Pictures of Plaintiff Brown's recent Class Fast-Release Quick Gels purchase appear below:

  

95.     Plaintiff Brown sought an acetaminophen product since she suffers from back pain stemming from a medical procedure, and occasional headaches.

96.     She purchased the Class Fast-Release Quick Gels consistently for about one year, but stopped purchasing them in July 2018 as she felt the medication was no longer effective and because she did not notice that the medication worked any faster for her than traditional, cheaper Walgreens acetaminophen products, like the tablets.

97.     She purchased the Class Fast-Release Quick Gels over other Walgreens brand and other acetaminophen products solely because they were advertised and labeled as "fast-release" and because she wanted to get rid of her pain as fast as possible.

98.     Defendants' marketing (labeling and advertising) misled Plaintiff Brown to believe that the Class Fast-Release Quick Gels she purchased would provide faster relief than other cheaper Walgreens acetaminophen products.

99.     Had Plaintiff Brown known that the Class Fast-Release Quick Gels did not act any faster than traditional, cheaper Walgreens products, she would not have been willing to pay the premium that she did for the Class Fast-Release Quick Gels. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

100.    The cost of the Class Fast-Release Quick Gels exceeded the value of the product and Plaintiff Brown did not receive the benefit of the bargain

**Plaintiff Lisa Satchel**

101.    Plaintiff Lisa Satchel purchased Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels, 24 count in December 2018 at Walgreens from a local Walgreens store in Illinois at a premium price over the brand's acetaminophen tablet products.

102.    A picture of Plaintiff Satchel's recent Class Fast-Release Quick Gels purchase appears below:



103.    Plaintiff Satchel sought an acetaminophen product to treat her arthritis.

104.    Her doctor recommended using a rapid release or fast-acting product.

105.    She purchased the Class Fast-Release Quick Gels consistently for many years at one of her neighborhood Walgreens – purchasing 2-3 bottles a month at about $8 per bottle – specifically because she wanted quick relief from her arthritic pain.

106.    She purchased the Class Fast-Release Quick Gels over other Walgreens brand and other acetaminophen products solely or in part because they were advertised and labeled as "fast-release" and because she wanted to get rid of her pain as fast as possible.

107.    Defendants' marketing (labeling and advertising) misled Plaintiff Satchel to believe that the Class Fast-Release Quick Gels she purchased would provide faster relief than other cheaper Walgreens acetaminophen products.

108.    Had Plaintiff Satchel known that the Class Fast-Release Quick Gels did not act any faster than traditional, cheaper Walgreens products, she would not have been willing to pay the premium that she did for the Class Fast-Release Quick Gels. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

109.    The cost of the Class Fast-Release Quick Gels exceeded the value of the product and Plaintiff Satchel did not receive the benefit of the bargain.

**Plaintiff Kenneth Brewer**

110.     Plaintiff Kenneth Brewer purchased Walgreens Extra Strength Pain Reliever Fast-Release Quick Gels in 2018 from his local Walgreens in Missouri. He purchased a 375-count bottle sometime in early to mid-2018. He purchased a smaller bottle sometime later in 2018.

111.     A picture of Plaintiff Brewer's recent 375 count Class Fast-Release Quick Gels purchase appears below.



112.     Plaintiff Brewer sought an acetaminophen product to treat his chronic pain because he cannot take Aleve for medical reasons.

113.     He has purchased the Class Fast-Release Quick Gels consistently for years, usually purchasing the 375-count bottle twice a year for approximately $15-18.

114.     Defendants' marketing (labeling and advertising) misled Plaintiff Brewer to believe that the Class Fast-Release Quick Gels he purchased would provide faster relief than other cheaper Walgreens acetaminophen products.

115.     Had Plaintiff Brewer known that the Class Fast-Release Quick Gels did not act any faster than traditional, cheaper Walgreens products, he would not have been willing to pay the premium that he did for the Class Fast-Release Quick Gels. Instead, he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

116. The cost of the Class Fast-Release Quick Gels exceeded the value of the product and Plaintiff Brewer did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

117. Defendants' conduct violates the law. Defendants violated consumer protection laws and unjustly enriched themselves to the detriment of consumers. Defendants' conduct is ongoing and is the basis for Plaintiffs' class action allegations.

118. Plaintiffs represent a proposed class of hundreds of thousands of consumers who purchased and used the Class Fast-Release Quick Gels manufactured, designed, labeled and distributed by Defendants and sold under the Well at Walgreens brand name.

119. Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against Defendants, on their own and on behalf of the Classes defined below. Plaintiffs propose the following Classes in the interest of judicial economy and efficiency:

> **New York Class**:
> During the fullest period allowed by law, all persons who purchased the Class Fast-Release Quick Gels in the State of New York.
>
> **Illinois Class**:
> During the fullest period allowed by law, all persons who purchased the Class Fast-Release Quick Gels in the State of Illinois.
>
> **Missouri Class**:
> During the fullest period allowed by law, all persons who purchased the Class Fast-Release Quick Gels in the State of Missouri.

120. At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiffs reserve the right to modify these class definitions.

121. "Class Fast-Release Quick Gels" includes Walgreens Pain Reliever Acetaminophen Fast-Release Quick Gels, Walgreens Pain Reliever Acetaminophen PM Fast-Release Quick Gels, and any Walgreens acetaminophen products labeled and/or marketed as "fast-release" or "rapid release."

122. Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which they have a controlling

interest or which has a controlling interest in them; (c) Defendants' officers and directors; (e) Defendants' legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

123.   Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of each of the Classes defined above.

124.   <u>Numerosity</u>: While the exact number of class members cannot yet be determined, the Classes consist at a minimum of hundreds of people dispersed throughout the State of Illinois, Missouri, and New York, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Defendants.

125.   <u>Commonality</u>: Common questions of law and fact exist as to all members of each Class. Among the questions of law and fact common to the Classes are:

    a.   Whether Defendants knew, or reasonably should have known, that the Class Fast-Release Quick Gels placed into the stream of commerce would not function as advertised;

    b.   Whether the advertised "fast-release" and "rapid release" features of the Class Fast-Release Quick Gels are material facts that reasonable purchasers would have considered in deciding whether to purchase the Class Fast- Release Quick Gels;

    c.   Whether the Class Fast-Release Quick Gels are of the quality and character Defendants promised to consumers;

    d.   Whether Defendants mispresented the characteristics, qualities, and capabilities of the Class Fast-Release Quick Gels;

    e.   Whether Defendants made fraudulent, false, deceptive, misleading and/or otherwise unfair statements in connection with the sale of the Class Fast-Release Quick Gels on the product labeling, packaging and in advertising;

    f.   Whether Defendants engaged in unfair and deceptive trade practices pertaining to the Class Fast-Release Quick Gels;

    g.   Whether Defendants were unjustly enriched as a result of selling the Class Fast-Release Quick Gels;

    h.   Whether Defendants should be ordered to disgorge all or part of the profits it received from the sale of the Class Fast-Release Quick Gels;

i.  Whether Plaintiffs and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

j.  Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction and requiring that Walgreens engage in a corrective notice campaign and/or a recall of the Class Fast-Release Quick Gels to address misrepresentations and misleading statements on the packaging; and

k.  Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

126.  <u>Typicality</u>: Plaintiffs have substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiffs and all Class Members purchased the Class Fast-Release Quick Gels. All of the claims of Plaintiffs and Class Members arise out of Defendants' false, misleading, deceptive, and unfair conduct. Common to Plaintiffs and Class Members' claims are Defendants' conduct in marketing, designing, advertising, warranting, and/or selling the Class Fast-Release Quick Gels and Plaintiffs and Class Members' purchase of the Class Fast-Release Quick Gels.

127.  <u>Adequacy of Representation</u>: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

128.  The elements of Rule 23(b)(2) are met. Defendants will continue to commit the violations alleged, and the Class Members and the general public will be subject to and continue to suffer from the same or substantially similar deceitful marketing. Defendants have acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

129.  The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a

class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Walgreens, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

130. Any applicable statutes of limitations have been tolled by Defendants' knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

131. Alternatively, the facts alleged herein give rise to estoppel. Defendants were and are under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Fast-Release Quick Gels. At all relevant times and continuing to this day, Defendants misrepresented the true character, quality, and nature of the Class Fast-Release Quick Gels. Representations which Defendants knew or should have known were false, misleading, unfair, and/or deceptive. Plaintiffs and Class Members reasonably relied on Defendants' misrepresentations of material facts. Based on the allegations contained herein, Defendants are estopped from prevailing on any statute of limitations defense in this action.

132. Additionally, Defendants are estopped from raising any defense of laches due to their own unclean hands.

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF NEW YORK DECEPTIVE SALES PRACTICES ACT**
**N.Y. Gen. Bus. Law § 349**
**(Plaintiff Gray individually and on behalf of the New York Class)**

133.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

134.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or . . . in this state." N.Y. Gen. Bus. L. § 349(a).

135.    Defendants willfully or knowingly engaged in deceptive and misleading representations and omissions aimed at causing reasonable consumers and the public in the State of New York to be deceived about the Class Fast-Release Quick Gels.

136.    Defendants' conduct described herein constitutes deceptive acts or practices in the conduct of business, trade, or commerce.

137.    Defendants' unlawful conduct was consumer-oriented in that it was designed to, had the capacity to, and did, deceive consumers and affected consumer purchase decisions in the State of New York.

138.    Defendants' conduct described herein affected the public interest, and in particular, the public interest in New York State, because that conduct perpetrated a fraud on consumers in New York.

139.    As a direct and proximate cause of Defendants' deception in the State of New York, Plaintiff Gray along with the members of the New York Class have been injured by the violation of Section 349 described herein. This injury is separate from, and not derivative of, the injury to any other person or entity that may have resulted from Defendants' conduct. The injury suffered by Plaintiff Gray and the members of the New York Class includes, without limitation: the price premium paid for the Class Fast-Release Quick Gels as well as the deception itself.

140.    By reason of the foregoing, Defendants are liable to Plaintiff Gray and each member of the New York Class for actual damages suffered by that class member resulting from the above-

described violation of New York General Business Law § 349, or, if any class member's damages are less than $50, then $50 for each such class member, trebling of those damages, and reasonable attorneys' fees.

141.    Plaintiff Gray along with the members of the New York Class, as well as the consuming public of the State of New York, will suffer irreparable injury if Defendants are permitted to continue the deceptive practices described herein.

142.    By reason of the foregoing, Plaintiff Gray and the members of the New York Class are entitled to injunctive relief pursuant to GBL § 349, enjoining Defendants from at least expressly or impliedly representing to current and potential purchasers of the Class Fast-Release Quick Gels that they work faster than traditional, cheaper acetaminophen products.

**COUNT II**
**VIOLATION OF NEW YORK DECEPTIVE SALES PRACTICES,**
**FALSE ADVERTISING**
**N.Y. Gen. Bus. Law § 350**
**(Plaintiff Gray individually and on behalf of the New York Class)**

143.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

144.    Defendants attempted to directly and/or indirectly induce consumers to purchase the Class Fast-Release Quick Gels by its labeling. This act of product labeling was materially misleading and materially deceiving, or likely to be materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances and caused injury in violation of N.Y. Gen. Bus. L. § 350.

145.    This act was done with the purpose of misleadingly marketing the Class Fast-Release Quick Gels as working faster than traditional, cheaper acetaminophen products not labeled as fast-release, rapid release, or the like. This act was designed to attract public attention and directly and/or indirectly was an attempt by publication, dissemination, solicitation, endorsement, circulation or in any other way to induce Plaintiff Gray and New York Class Members to purchase the Class Fast-Release Quick Gels.

146. Defendants acts of materially deceptive and materially misrepresentative advertising and/or marketing presents a continuing threat to members of the public and consumers at large because their advertisements induces and has the potential to induce reasonable consumers acting reasonably under the circumstances to purchase the Class Fast-Release Quick Gels which are not of the quality, nature, benefit which Defendants represents.

147. By their actions, Defendants are engaging in materially deceptive and/or materially misleading acts in connection with the advertisement and/or marketing of the Class Fast-Release Quick Gels within the meaning of the statute. Such advertisements are likely to mislead and/or deceive, have the potential to mislead and/or deceive and continue to mislead and/or deceive, the consuming public at large for the reasons detailed above.

148. The above-described false, misleading, and/or deceptive advertising disseminated continues to have a likelihood to deceive reasonable consumers acting reasonably under the circumstances in that Defendants have failed to disclose the truth about the Class Fast-Release Quick Gels.

149. In making and disseminating the statements alleged herein, Defendants should have known their practices were materially deceptive and/or materially misleading in violation of N. Y. Gen. Bus. L. § 350. Plaintiff Gray and New York Class Members based their decisions to purchase the Class Fast-Release Quick Gels in substantial part on Defendants' advertisement, material misrepresentations, and omitted material facts. The revenues to Defendants attributable to products sold in those false and misleading advertisements likely amount to millions of dollars. Plaintiff Gray and New York Class Members were injured in fact and lost money or property as a result of Defendants' actions in relation to the false advertisement of the Class Fast-Release Quick Gels.

**COUNT III**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**815 ICLS §§ 505/1 *et seq.***
**(Plaintiffs Brown and Satchel individually and on behalf of the Illinois Class)**

150. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

151. Plaintiffs and Class Members are "persons" and "consumers" within the meaning of ICLS 505/1(c) and (e).

152. Defendants Walgreens and LNK engaged in "trade" or "commerce" within the meaning of ILCS 505/1(f).

153. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits the use of unfair and deceptive business practices in the conduct of trade or commerce.

154. Specifically, Section 2 of the Act, provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1996, in the conduct or trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2

155. Section 2 of the "Uniform Deceptive Practices Act" defines deceptive trade practices as, among other things, representation that goods have "…characteristics, ingredients, uses, [or] benefits…that they do not have…," or "any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2. In order to prove deceptive practices, a party need not prove actual confusion or misunderstanding. *Id.*

156. Based on the conduct, statements and omissions described above, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices related to the marketing, labeling, packaging and sale of the Class Fast-Release Quick Gels. Defendants knowingly and intentionally misled consumers into believing that the Class Fast-Release Quick Gels fulfilled its

"fast-release" and "rapid release" promise, when in fact the gelcaps worked slower than other non-fast-release acetaminophen Walgreens products.

157.    Defendants' acts and practices have deceived Plaintiffs and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Fast-Release Quick Gels to Plaintiffs and the Class Members, Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, and caused injuries to Plaintiffs and Class Members. The misrepresentations and omissions by Defendants pertained to information that was material to Plaintiffs' and Class Members' purchase decisions, as it would be material to all reasonable consumers.

158.    As a result of Defendants' unlawful acts, Plaintiffs and Class Members sustained injuries and are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Illinois law, including but not limited to 815 ILCS 505/10a(a) and (c).

### COUNT IV
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT (MMPA)
#### Mo. Rev. Stat. §§ 407.010, *et seq.*
#### (Plaintiff Brewer individually and on behalf of the Missouri Class)

159.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

160.    Missouri Plaintiff Brewer, Missouri Class Members, and Defendants are all "person[s]" for purposes of the MMPA. Mo. Rev. Stat. § 407.010, *et seq.*

161.    The Class Fast-Release Quick Gels at issue meet the definition of "merchandise" for purposes of the MMPA. *Id.*

162.    Defendants Walgreens and LNK engaged in "trade" or "commerce" within the meaning of the MMPA. *Id.*

163.    Under the MMPA, Defendants has a statutory duty to refrain from deceptive acts and practices.

164.    Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or

omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...in or from the state of Missouri." Mo. Rev. Stat. § 407.020.

165.     Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Class Fast-Release Quick Gels in trade or commerce in the State of Missouri, in violation of the MMPA.

166.     As detailed herein, in selling the Class Fast-Release Quick Gels to Plaintiff Brewer and Missouri Class Members, Defendants misrepresented, and continues to misrepresent, material facts, either expressly or by implication by representing, at a minimum, that the "fast-release" gels would work faster than traditional, cheaper acetaminophen products.

167.     Missouri Plaintiff Brewer and Missouri Class Members have standing to pursue this claim as they have suffered actual economic damages as a proximate result of Defendants' actions as set forth herein.

168.     Defendants' representations and/or omissions were materially misleading and deceptive, and were a producing cause of economic damages to consumers, including Plaintiff Brewer and the Missouri Class.

169.     Plaintiff Brewer and members of the Missouri Class purchased the Class Fast- Release Quick Gels for their own use, and, as a direct and proximate result of Defendants' unconscionable, unlawful and deceptive practices, have suffered and continue to suffer ascertainable loss.

170.     As a direct and proximate result of Defendants' violations of the MMPA, Plaintiff Brewer and members of the Missouri Class have sustained economic losses and other damages for which they are entitled to statutory relief, compensatory damages, and declaratory relief according to proof.

171.     Defendants violated and continues to violate the MMPA by engaging in practices proscribed by Mo. Rev. Stat. Mo. Rev. Stat. § 407.010, *et seq.,* in connection with the sale and advertisement of the Class Fast-Release Quick Gels, with the intent to, and did result in, inducing Plaintiff Brewer and members of the Missouri Class to purchase the Class Fast-Release Quick Gels.

172.    Defendants' false, deceptive, and misleading business practices constituted, and constitute, a continuing course of conduct in violation of the MMPA because Defendants continue to sell the Class Fast-Release Quick Gels with representations and/or omissions misleading consumers about the true quality, characteristics, uses, and/or benefits of the product, and has thus caused economic damage and continues to cause economic damage to Plaintiff Brewer and the Missouri Class.

173.    Neither Plaintiff Brewer, the Missouri Class Members, nor any reasonable consumer would have purchased the Class Fast-Release Quick Gels at the price premium they paid, if they were informed that the allegedly fast-acting gels did not actually work faster than traditional, cheaper acetaminophen products.

174.    Plaintiff Brewer acted as a reasonable consumer in light of all circumstances in that reasonable consumers seeking pain relief prefer relief that is "fast-release" and quick as opposed to that which is not.

175.    Defendants' omissions, deceptions, and misrepresentations would cause a reasonable person to enter into the transaction believing the claims on the label that the product was "fast-release" and quick as opposed to that which is not "fast" or "quick."

176.    Plaintiff Brewer and the members of the Missouri Class have been damaged, at a minimum, by paying a price premium for the Class Fast-Release Quick Gels, an amount that can be calculated with a reasonable degree of certainty based on common evidence and expert analysis.

177.    By reason of the foregoing, Plaintiff Brewer and members of the Missouri Class are entitled to injunctive relief pursuant to the MMPA, enjoining Defendants from at least expressly or impliedly representing to current and potential purchasers of the Class Fast-Release Quick Gels that they work faster than traditional, cheaper acetaminophen products.

178.    By reason of the foregoing, Plaintiff Brewer and members of the Missouri Class are also entitled to injunctive relief in the form of corrective advertising requiring Defendants to disseminate truthful, adequate representations, disclosures, and/or warnings about the true quality, nature, benefits, etc. of the Class Fast-Release Quick Gels.

179.    Plaintiff Brewer and members of the Missouri Class shall be irreparably harmed if such order is not granted.

## COUNT V
## UNJUST ENRICHMENT
**(Plaintiffs individually and on behalf of the New York, Illinois, and Missouri Classes)**

180.    Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

181.    As described above, Defendants sold the Class Fast-Release Quick Gels to Plaintiffs and Class Members by making false, misleading, and/or deceptive representations about the products' speed and capabilities as compared to Walgreens' cheaper, non-fast-release acetaminophen products.

182.    Defendant Walgreens unjustly charged and continues to charge Plaintiffs and Class Members a premium to purchase the Class Fast-Release Quick Gels over the non-fast-release acetaminophen Walgreens products.

183.    As a result of the false, misleading, unfair, and/or deceptive practices and omission about the true nature and quality of Class Fast-Release Quick Gels, Defendants obtained monies that rightfully belong to Plaintiffs and Class Members.

184.    Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members who, without knowledge of the true quality and nature of the Class Fast-Release Quick Gels, paid a higher price for them than what they were worth.

185.    Defendants also received monies for those Class Fast-Release Quick Gels that Plaintiffs and Class Members would not have otherwise purchased had they known the true nature and quality of the products.

186.    Defendants retention of these wrongfully acquired profits would violate fundamental principles of justice, equity, and good conscience.

187.    Plaintiffs and Class Members seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask the Court to enter judgment awarding the following relief:

A. An order certifying the proposed Classes for New York, Illinois, and Missouri;

B. An order awarding Plaintiffs and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C. An order awarding Plaintiffs and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D. An order requiring Defendants to adequately represent the true nature, quality, and capability of the Class Fast-Release Quick Gels;

E. An order (a) issuing a nationwide recall of the Class Fast-Release Quick Gels to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Fast-Release Quick Gels; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F. An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G. An order awarding Plaintiffs and Class Members pre-judgment and post-judgment interest as allowed by law;

H. An order awarding Plaintiffs and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I. An order awarding such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable under the law.

DATED: October 28, 2020                    Respectfully submitted,

/s/ Mitchell M. Breit
Mitchell M. Breit
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016
Telephone: (212) 784-6400

mbreit@simmonsfirm.com

Greg Coleman (*pro hac vice* forthcoming)
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2020, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ *Mitchell M. Breit*
Mitchell M. Breit
SIMMONS HANLY CONROY